UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                    Case No. 04-10197-DHW
                                                         Chapter 7
ANGELA FRANCES BROWN,

    Debtor.
_____

WILLIAM C. BROWN,

    Plaintiff,
v.                                                       Adv. Proc. No. 04-1112-DHW

ANGELA FRANCES BROWN,

    Defendant.

## MEMORANDUM OPINION

William C. Brown (hereinafter "plaintiff") filed a complaint on April 19, 2004 against Angela Frances Brown (hereinafter "debtor") under 11 U.S.C. §§ 727 and 523. The plaintiff objects to the discharge of the debtor *in toto* and requests that his claim be determined nondischargeable.

The complaint was tried in Dothan, Alabama on May 18, 2005. The plaintiff appeared *pro se,* and the debtor was represented by counsel Ray T. Kennington.

At the close of the trial, the court ruled in the debtor's favor on the plaintiff's claims under 11 U.S.C. § 727(a)(2) and (a)(4) and 11 U.S.C. § 523(a)(4). The plaintiff withdrew his claim under 11 U.S.C. § 523(a)(15). The only remaining claim lies under 11 U.S.C. § 523(a)(6).

### JURISDICTION

The court's jurisdiction over this adversary proceeding is derived from 28

U.S.C. § 1334 and the District Court for this district's general order of reference of title 11 matters to this court. Further, because an objection to the discharge or dischargeability of a particular debt is a core proceeding under 28 U.S.C. § 157, the court's jurisdiction extends to the entry of a final order or judgment.

FINDINGS OF FACT

The parties were married and lived together in North Carolina until they separated in April 2001. Throughout the separation, the debtor resided in the marital residence and retained possession of most of the marital property. In July or August 2001, the debtor, who was in need of funds, conducted a yard sale at which she sold certain personal property. She received approximately $600.

The parties filed for divorce in April 2002, and thereafter, the North Carolina Family Court entered a consent decree of divorce in July 2002. The decree made provision for the division of the parties' marital property. The plaintiff was awarded particular furniture, appliances, electronics, and clothing, including items which had been previously sold by the debtor.

The debtor moved from North Carolina to Alabama in September 2002. She denies that she brought to Alabama any of the property awarded to the plaintiff with the exception of a washer, which she admits having in her possession. She further testified that, upon advice of counsel and before she left North Carolina, she replaced the items that she had sold.[1]

However, on November 15, 2002, the North Carolina District Court entered an order requiring the debtor to return or replace the personal property which had been awarded to the plaintiff. When the debtor failed to do so, the court entered an order requiring the debtor to appear and show cause for her failure to comply with the order. The debtor did not appear at the hearing or otherwise defend, and on June 5, 2003 a default judgment entered against her in the amount of $8,225 representing the value of the missing property. On September 30, 2003, the debtor filed a motion to set aside the default judgment

---

[1] She testified that they had bought the property new but had owned it for a while. Therefore, she replaced it with used items.

2

based on the ground of excusable neglect. By order dated November 14, 2003, the court denied the debtor's motion.

Meanwhile, on December 8, 2002 the plaintiff filed a criminal report with the Wayne County, North Carolina Sheriff's Office for the missing property. Plaintiff's Exhibit 2 is a copy of the sheriff's incident/investigation report. Therein, the investigating officer reports that he spoke with the debtor and "she stated she took the items as part of the settlement for money owed to her." Pl's Ex. 2. The Sheriff's Office did not pursue the incident further.

CONCLUSIONS OF LAW

The plaintiff bears the burden of proving the elements of 11 U.S.C. § 523(a)(6) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991). Here, plaintiff contends that the debtor converted his interest in the property by selling the jointly owned property later awarded to him in the divorce. 11 U.S.C. § 523(a)(6) provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> > (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

The injury must be both "willful and malicious." "Willful" means deliberate or intentional. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 n.3, 118 S. Ct. 974, 977 (1998). "Willful" modifies "injury." To be nondischargeable, the debtor must intend to injure the debtor or his property.[2] *Id.* at 61. Willful does not encompass a recklessly or negligently inflicted injury. *Id.* at 64.

"Malicious" means "'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" *Hope v. Walker (In re*

---

[2] It is not sufficient that the debtor intentionally committed an act which resulted in injury if the injury itself was neither intended nor substantially certain to result from the act. *Hope v. Walker (In re Walker)*, 48 F.3d 1161 (11th Cir. 1995).

3

*Walker)*, 48 F.3d 1161, 1164 (11th Cir. 1995) (quoting *Lee v. Ikner (In re Ikner)*, 883 F.2d 986, 991 (11th Cir. 1989)).

"Willful and malicious injury includes willful and malicious conversion, which is the unauthorized exercise of ownership over goods belonging to another to the exclusion of the owner's rights." *Wolfson v. Equine Capital Corp. (In re Wolfson)*, 56 F.3d 52, 54 (11th Cir. 1995). But not every tort of conversion falls within the purview of 11 U.S.C. § 523(a)(6). "[I]nnocent or technical" conversion of a person's property does not lend itself to a finding of a willful and malicious injury for dischargeability purposes. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332, 55 S. Ct. 151, 153, 79 L. Ed. 393 (1934). To be nondischargeable, the resulting injury must have been deliberate and intentional. *Geiger*, 523 U.S. at 61; *see McIntyre v. Kavanaugh*, 242 U.S. 138, 141, 37 S. Ct. 38, 39, 61 L. Ed. 205 (1916). A negligent or reckless conversion would not fall within the statute. Deliberate and intentional injury "does not follow as of course from every act of conversion, without reference to the circumstances." *Davis,* 293 U.S. at 332.

One federal appellate court has opined that when conversion is at issue under § 523(a)(6), "nondischargeability turns on whether the conduct is (1) headstrong and knowing ("willful") and, (2) targeted at the creditor ("malicious"), at least in the sense that the conduct is certain or almost certain to cause financial harm." *Barclays American/Business Credit, Inc v. Long (In re Long)*, 774 F.2d 875, 881 (8th Cir. 1985).

Applying these principles to the case *sub judice* the court finds that the debtor deliberately and intentionally sold marital property after separation from her husband but before their divorce was final. This sale, where no payment was made to the plaintiff for his interest, was, under North Carolina law, a conversion of plaintiff's interest in the property. North Carolina law provides for the

> 'freezing' of the marital estate as of the date of the parties' separation. . . . Attempts by one or both spouses to deplete the marital estate or dispose of marital property after the date of separation but before distribution may be considered by the court, when making the division, and any *conversion* of marital property

> for individual purposes may be charged against the acting spouse's share.

*Sharp v. Sharp*, 84 N.C. App. 128, 129, 351 S.E.2d 799, 800 (1987) (citing N. Car. Gen. Stat. 50-20(c)). Emphasis added.

The question then turns to whether this act of conversion was willful and malicious. Innocent or technical conversions are not excepted from discharge, and to determine whether the conversion is innocent or technical, *Davis* instructs this court to look to the circumstances of the particular case.

There are circumstances that militate on the side of the debtor. First, at the time she sold the property in question, no court had divided the marital assets nor was she under any court-ordered injunction preventing transfer of the marital property.[3] Secondly, the debtor's uncontradicted testimony was that, except for the washer, she replaced all of the property that had been sold.

There are, however, circumstances that weigh against the debtor. For example, why would the debtor consent to the entry of a divorce decree awarding to the plaintiff property that she had previously sold? Second, the debtor has made contradictory statements concerning what happened to the property. She testified in this proceeding that the property was sold at a yard sale, yet she told a North Carolina sheriff's investigator that the property was part of the divorce settlement in exchange for debts owed to her by the plaintiff. The inconsistencies of these statements brings the debtor's credibility into question. In addition, there is nothing in these facts to show that the debtor was under the impression that her power to deal with plaintiff's one-half interest in the property had been broadened beyond what state law provided.

Further, the court is troubled by the potential *res judicata* effect of the North Carolina District Court's order of judgment against the debtor. There, the debtor would have been able to assert a similar defense to the plaintiff's action (that the property had been sold but replaced) that she is endeavoring to assert

---

[3] As previously noted, however, the court is aware that a North Carolina statute freezes marital assets upon separation of the spouses and that as a result, no injunction is necessary.

5

here. Yet, she did not appear and defend in that court, and further, her motion for reconsideration on grounds of excusable neglect was rejected by the court. Should the debtor be given a second bite at the apple in this court when she did not appear in a prior proceeding where her defense would have been considered?[4]

In addition, if she replaced the property, she did so apparently only on advice of counsel. A court order later required her to do so. Although she testified that she replaced the property prior to entry of the order, a year or more had likely elapsed since the sale. The later and more mandatory the replacement, the weaker the defense that she did not intend to injure the plaintiff by the initial sale.

Moreover, the debtor testified that she did not turn over to the plaintiff all of the property awarded to him in the divorce. The debtor brought a washer with her to Alabama that was awarded to the plaintiff and included on the police report of missing items. She admittedly holds the washer in knowing disregard of his rights.

Weighing all these circumstances, the court concludes that the debtor's injury to plaintiff's property was both willful and malicious. That is, by selling property in which the plaintiff had an interest, the debtor intended to injure the plaintiff or knew that injury to the plaintiff was substantially certain.

Turning now to the matter of damages. Plaintiff was awarded an $8,225 judgment against the debtor by the North Carolina District Court. That amount represented the total value of the property awarded to the plaintiff in the divorce but which he did not receive. However, 11 U.S.C. § 523 renders nondischargeable only those debts that are the result of a willful and malicious injury. It follows that the debtor could only convert plaintiff's one-half interest in the property and not the other one-half interest, which she owned. Hence,

---

[4] The court recognizes that default judgments are not often given preclusory effect because the doctrine of *res judicata* requires the matter to have been actually litigated. Some courts deem that element satisfied, however, when it is shown that the debtor had an opportunity to litigate the matter, did not do so, and the failure to do so was without legal excuse.

6

plaintiff's claim which is attributable to the conversion is $4,112.50, one-half of the property's value.

A separate order will enter finding for the plaintiff and holding that $4112.50 of his claim against the debtor is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

Done this the 24th day of June, 2005.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: William C. Brown, Plaintiff
   Ray T. Kennington, Attorney for Debtor